# CHARLESTON.

MANUFACTURERS LIGHT & HEAT CO. *v.* V. E. TENANT *et al.*

(No. 5884)

Submitted September 20, 1927.   Decided September 27, 1927.

1.  MINES AND MINERALS—*Co-owners or Joint Owners of Mining Lease, When Working Lease, Constitute "Mining Partnership."*

     While co-owners or joint owners of a mining lease, before they operate for oil or gas, are tenants in common or joint tenants, when they unite and co-operate in working the lease, they constitute a mining partnership.   (p. 224.)

     (Mines and Minerals, 40 C. J. § 798.)

2.  PARTNERSHIP—*One Not Knowing of Agreement Limiting Partner's Authority May Presume he Has Authority to Bind Firm by All Acts Necessary to Carry on Business in Usual Way.*

     One dealing with a partner, without knowledge of any partnership agreement limiting the authority of such part-

ner, may presume that the latter has authority to bind the firm by all acts necessary for carrying on the business in the usual way. (p. 224.)

(Partnership, 30 Cyc. pp. 480, 481.)

3. MINES AND MINERALS—*In Absence of Contract Limiting Authority, Managing Partner of Mining Partnership May Transact Business Necessary to Carry on Mining Partnership; One Without Knowledge of Agreement Limiting Powers of Managing Partner May Presume he Has Authority to Transact Business Necessary for Mining Partnership.*

In the absence of a contract limiting his authority to act for the partnership, the managing partner of a mining partnership has authority to transact such business as may be necessary to carry on the undertaking for which the partnership exists; and one dealing with him, without knowledge of any agreement limiting his powers, may presume that he has such authority. (p. 225.)

(Mines and Minerals, 40 C. J. § 802.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Wetzel County.

Action by the Manufacturers' Light & Heat Company against V. E. Tenant, A. J. Simmons, W. M. Miller, and others. Judgment for plaintiff against defendants Simmons and Miller, and plaintiff brings error.

*Reversed; new trial awarded.*

*Larrick & Lemon,* for plaintiff in error.
*W. M. Hess,* for defendants in error.

MILLER, JUDGE:

The plaintiff sued in assumpsit A. J. Simmons, W. M. Miller and twenty-one others for the price of a quantity of oil well casing delivered to Simmons and used in a well in which all of the defendants were interested. It was alleged in the declaration that the defendants were partners. The defendants filed their special plea denying partnership. Upon the introduction of all the evidence offered by the parties, the trial court instructed the jury that the twenty-one defendants "had contracted with the defendants, A. J. Simmons and W. M. Miller, who were then the owners of the

lease of the respective dates of the assignment, to drill and furnish casing and complete a well as in said contracts mentioned, that the defendants named outside of Mr. Simmons and Mr. Miller, are not liable in this case. And there being no dispute as to the amount that is due the plaintiff, the court instructs the jury to return a verdict in favor of the plaintiff against the defendants A. J. Simmons and W. M. Miller, for the amount of $2,009.80, with interest from January 5, 1923.'' Plaintiff prosecutes the present writ of error to a judgment entered on a verdict found in accordance with this instruction.

From the evidence it appears that Simmons and Miller, in the firm name of A. J. Simmons Company, held under lease for the purpose of operating the same for oil and gas, three separate tracts of land, aggregating 182 acres, on which they had one producing well. Previous to the time the present cause of action arose, A. J. Simmons Company sold and assigned to each of the other defendants in this action certain interests in the leasehold, by separate contracts. The contracts provided that, ''whereas the said A. J. Simmons Company is the sole and exclusive owner of the above named leases, together with one producing well drilled on the said property and all equipment, such as casing, iron tanks, * * * and everything necessary for taking production from said well; the said A. J. Simmons Company agrees, in addition to drilling another test well on the one hundred eighty-two acre tract, as set out above, to drill through and to the formation known as the fourth sand unless oil or gas be found in paying quantities at a lesser depth. And A. J. Simmons Company agree and bind themselves, in the event the second well to be drilled is a producer, that they will equip the same at their own expense.'' The further provisions of the contract relate to the drilling of another or other wells, the division of the proceeds of the oil or gas, and the organization of a corporation to take over the property, in case a majority of the owners of the leasehold thought best to do so.

In completing the well provided for in the contracts of assignment, Simmons contracted with the plaintiff for a quantity of casing, which he failed to pay for. It is admitted

that Simmons and Miller had been operating under the firm name of A. J. Simmons Company. F. G. Burson, plaintiff's superintendent, through whom the sale of the casing was made to Simmons, knew of this fact, and testified that before making the sale he learned from V. E. and Harry Tenant, who were drilling the well, that they "had an interest" in it. He was well acquainted with them, and they had drilled wells for the plaintiff company. What Burson knew of the other defendants being interested in the well does not appear.

The twenty-one defendants who were dismissed from the case contend that they were tenants in common of the leasehold only, and that they are protected by the special contracts with A. J. Simmons Company.

The general rule is that while co-owners or joint owners of a mining lease, before they operate for oil and gas, are tenants in common or joint tenants, when they unite and co-operate in working the lease, they constitute a mining partnership. Archer on Oil and Gas, 625; *Childers* v. *Neely,* 47 W. Va. 70, 81 Am. St. Rep. 777, 49 L. R. A. 468; *Blackmar* v. *Williamson,* 57 W. Va. 249; *Greenlee* v. *Steelsmith,* 64 W. Va. 353; *Bartlett & Stancliff* v. *Boyles,* 66 W. Va. 327; *Wetzel* v. *Jones,* 75 W. Va. 271.

Defendants insist, however, that their special contract with A. J. Simmons Company limits their liability as partners in the undertaking and relieves them against the contract made between plaintiff and Simmons. But plaintiff was not advised of the agreement between A. J. Simmons Company and the other defendants.

> "If the party who deals with the partners does not know of a limitation upon the authority of the partner with whom he is dealing, and if a partnership exists in fact, the other partners are liable on contracts within the scope of the partnership business made by such partner, even where the adversary party did not know who such partners were when he entered into such contract." 3 Page on Contracts, Sec. 1700.

> "It is, undoubtedly, a generally accepted doctrine that whatever, as between the partners them-

selves, may be the limits set as to each other's authority, every person not acquainted with those limits is entitled to assume that each partner is empowered to do for the firm whatever is necessary for the transaction of its business, in the way in which that business is ordinarily carried on by other people." 5 Elliott on Contracts, Sec. 4925; I Id., Sec. 490.

But here there was not even a limitation on the authority of Simmons, only the agreement on the part of his original firm to furnish the materials for drilling the well. He was apparently acting within the scope of the partnership when he purchased the casing. It was a necessary material. Plaintiff's agent Burson knew that the purpose of the partnership, if it in fact existed, was to operate the property, and that Simmons was the managing partner. Without notice of Simmons' contract to furnish the material himself, plaintiff had a right to believe the former had authority to purchase such supplies as were actually necessary in carrying out the undertaking; and Burson knew that the defendants, Tenant brothers, were drilling the well.

The third point advanced by the defendants is that the managing partner in a mining partnership has no authority to make contracts binding the other partners. It is true there is a difference between an ordinary partnership and a mining partnership: the first results from the intent of the parties; the other from the fact of the co-tenants undertaking to operate their lease or property. "A mining partnership is governed by all the rules applicable to ordinary partnerships, except such as flow from this fundamental difference in the two associations." Mills & Willingham on Oil and Gas, Sec. 185. Therefore, "the powers of mining partners are limited to the performance of such acts, in the name of the partnership, as may be necessary to the transaction of the business of the partnership, or customary in such business." Id. Sec. 187; 3 Page, Sec. 1701; 20 R. C. L. 1060; 1 Barringer & Adams on Mines and Mining 751; *Childers* v. *Neely, supra.* There can be no question that the purchase of casing was one of the acts necessary to carry out the purpose for

which the parties here united in the operation of producing oil and gas. With no notice of A. J. Simmons Company's contract to furnish all supplies the plaintiff had a right to assume that the managing partner was clothed with authority to bind the other partners for necessary materials.

For the reasons assigned we are of opinion that the trial court erred in directing a verdict for the twenty-one defendants, with the exception of the defendant John Brown, who was not served with process. The judgment will, therefore, be reversed, the verdict of the jury set aside, and the plaintiff awarded a new trial.

*Reversed; new trial awarded.*