480 S.E.2d 529

CLINT HURT & ASSOCIATES, INC., Plaintiff Below, Appellant,

v.

RARE EARTH ENERGY, INC. and Rare Earth Energy Drilling Program 1987–2 Limited Partnership, Defendants Below,

Rare Earth Energy Drilling Program 1987–2 Limited Partnership, Appellee.

No. 23311.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 11, 1996.

Decided Dec. 5, 1996.

Larry Skeen, Skeen and Skeen, Ripley, for Appellant.

Scott E. Wilson, Katherine M. Carpenter, Waters, Warmer & Harris, Clarksburg, for Appellee, Rare Earth Energy Drilling Program 1987–2 Limited Partnership.

PER CURIAM: [1]

Clint Hurt & Associates, Inc., a drilling company, appeals a summary judgment or-der of the Circuit Court of Ritchie County dismissing its suit for payment based on its drilling of four wells [2] against one of the defendants, namely, Rare Earth Energy Drilling Program, 1987–2 Limited Partnership, the owner of the four wells. Earlier, by order entered on June 24, 1994, Clint Hurt & Associates, Inc. (hereinafter, Clint Hurt) had been awarded summary judgment in the amount of $253,856.68 against the other de-fendant, Rare Earth Energy, Inc. (hereinaf-ter Rare Earth) based on a written contract between Clint Hurt and Rare Earth for drill-ing the four wells.[3] On appeal, Clint Hurt argues that defendant Rare Earth Energy Drilling Program, 1987–2 Limited Partner-ship (hereinafter 1987–2 Limited), as the owner of the four wells, and all the individual general partners of 1987–2 Limited [4] are also liable because Rare Earth was acting as an agent, actual or implied, for 1987–2 Limited and because the relationship between Rare Earth and 1987–2 Limited created a mining partnership, which, by operation of law, made all partners liable. Because we find no merit in Clint Hurt's agency arguments and because the circuit court's decision is sup-ported by the record, we affirm the circuit court's granting of summary judgment.

I.

FACTS AND BACKGROUND

The facts relevant to this appeal have been stipulated by the parties and are not at is-sue.[5] On December 31, 1987, 1987–2 Limited was formed for the purpose of holding work-

---

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honor-able Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. Payment was sought for the drilling of the following four wells: McAllaster # 1 Well, API No. 47–085–7732; Barnes/McKinley # 1 API No. 47–085–7739; Nichols # 1 Well, API No. 47–085–7740; and Underwood # 2 Well API No. 47–085–7750 (hereinafter the four wells).

3. By order entered on February 15, 1995, this Court refused to hear Rare Earth's petition for appeal.

4. The circuit court, by order entered on August 30, 1995, also denied Clint Hurt's motion to amend its complaint to name 1987–2 Limited's general partners as additional defendants.

5. The facts of this case certainly support the circuit court's comment "that no other kind of case generally present[s] ... the convoluted fac-tual situations that are often presented in oil and gas cases."

ing interests in oil and gas wells, and a Certificate of Limited Partnership was issued on January 5, 1988 by the Office of the West Virginia Secretary of State. According to 1987–2 Limited's partnership agreement, Rare Earth was the managing general partner of 1987–2 Limited, with 1987–2 Limited owning 100% of the working interest in any property, including wells. William R. Spatafore was both the Original Limited Partner and the Organizational Limited Partner, which roles terminated when there was an additional limited partner and an additional general partner, respectively. The termination of these roles of Mr. Spatafore was noted in an amendment of the partnership agreement filed on January 29, 1988 in the Office of the Secretary of State.

The partnership agreement in Section 5.1 provided that all general and limited partners delegate to the managing general partner "the right to manage and control the business of the Partnership and the Managing General Partner shall conduct, direct and exercise full control over all activities of the Partnership." The partnership agreement in Section 5.1 also provided:

> The Additional General Partners have delegated all of their authority as General Partners, except as specifically provided for in the Partnership Agreement, to the Managing General Partner and have no authority to bind the Partnership or other Partners.

Rare Earth, a West Virginia corporation, was engaged in the drilling of oil and gas wells on behalf of others. William R. Spatafore, in addition to his organizational role for 1987–2 Limited, was also the President of Rare Earth. As Managing General Partner of 1987–2 Limited, Rare Earth was responsible for the management and operation of the partnership.

On December 31, 1987, 1987–2 Limited entered into two agreements with Rare Earth, a drilling agreement and an operating agreement. In the drilling agreement, Rare Earth agreed to perform turnkey services for the drilling and completion of six wells, which included the four wells (hereinafter the drilling agreement). Section 3 of the drilling agreement, entitled "Turnkey Services," provides that "Rare Earth shall be solely responsible for the drilling and Completion of the wells in question pursuant to the terms of this Agreement." Section 4(b) of the drilling agreement, entitled "Turnkey Drilling Price," provides that Rare Earth "may contract or subcontract all or any part of its work hereunder . . . ."

In the operating agreement, Rare Earth agreed to operate the six wells, including the four wells, and to market all gas and oil produced.

On September 29, 1987 (before 1987–2 Limited was organized), Rare Earth contracted with Clint Hurt through an International Association of Drilling Contractors Drilling Bid Proposal with attached specifications for Clint Hurt to drill certain wells (hereinafter "Harris/Cokely Contract").[6] On numerous occasions, both before and after the four wells were drilled, Clint Hurt had drilled other wells for Rare Earth.[7] The "Harris/Cokely Contract" listed Rare Earth as the operator and Clint Hurt as the contractor, and the wells to be drilled thereunder were not owned by 1987–2 Limited. Mr. Spatafore, as President of Rare Earth, executed the "Harris/Cokely Contract," which contained no reference to 1987–2 Limited.

By letter dated August 23, 1988 from Clint Hurt to Rare Earth, the "Harris/Cokely Contract" was amended to govern the drilling of six wells including the four wells (hereinafter amendment letter). The amendment letter, drafted by Clint Hurt and accepted by Mr. Spatafore[8], was executed after the comple-

---

6. The drilling contract between Rare Earth and Clint Hurt is called the "Harris/Cokely Contract" because the contract specifically provides for the drilling of two wells in Ritchie County by Clint Hurt for Rare Earth, namely the Harris # 1 well and the Cokely # 1, which were drilled by Clint Hurt on November 30, 1987 and November 17, 1987, respectively.

7. The business relationship between Clint Hurt and Rare Earth spanned over ten years and resulted in the drilling of approximately 64 wells.

8. The amendment letter was accepted by signing on the following lines:

   Agreed & Accepted:
   By <u>William R. Spatafore/s/</u>
   Date <u>August 25, 1988</u>

tion of the drilling of the four wells. No language indicated the capacity in which Mr. Spatafore executed the amendment letter and nothing in the amendment letter referred to 1987–2 Limited.

The four wells are located in Ritchie County and were commenced and completed on the following respective dates: January 31, 1988 through February 5, 1988; February 11, 1988 through February 16, 1988; February 17, 1988 through February 22, 1988; and, February 23, 1988 through February 26, 1988. Thereafter, Clint Hurt sent various invoices and other correspondence seeking payment to Rare Earth; however, no such payment demands were sent or made to 1987–2 Limited.

After Rare Earth failed to pay Clint Hurt for the drilling of the four wells, on July 26, 1993, Clint Hurt filed suit in Ritchie County against five defendants, Rare Earth, Rare Earth Energy Drilling Program 1985–3 Limited Partnership, Rare Earth Energy Drilling Program 1986–3 Limited Partnership, Clarence W. Mutschelknaus and Ritchie Petroleum Corp.[9] The complaint contained four counts: Count one sought recovery in contract from Rare Earth; Count two sought recovery in quantum merit from the two named limited partnerships, which Clint Hurt erroneously thought owned the four wells, for all revenues received from two of the four wells; Count three sought recovery from the named limited partnerships on an unjust enrichment theory; and, Count four sought to force the sale of the four wells with the proceeds to be used to satisfy any judgment awarded.

By order entered on November 1, 1993, the circuit court dismissed the defendants Rare Earth Energy Drilling Program 1985–3 Limited Partnership and Rare Earth Energy Drilling Program 1986–3 Limited Partnership and granted Rare Earth's motion to dismiss it as to Count IV, the forced sale

relief. This order also granted Clint Hurt the right to file an amended complaint adding 1987–2 Limited, the owner of the four wells, as a defendant. An amended complaint was filed by Clint Hurt.

By order entered on June 27, 1994, Clint Hurt was granted summary judgment against Rare Earth in the amount of $114,298.25 with pre-judgment interest for a total judgment of $253,856.68. The June 27, 1994 order denied Clint Hurt summary judgment as to 1987–2 Limited, and denied, as premature, a previously filed motion to amend the complaint to add all the general partners of 1987–2 Limited as defendants, but granted the right to refile and reassert if judgment against 1987–2 Limited was granted. On July 14, 1994, Clint Hurt filed a renewed motion to amend to add 1987–2 Limited's general partners. Rare Earth appealed the adverse judgment to this Court, which by order entered on February 15, 1995 denied, without comment, Rare Earth's petition for appeal.[10]

On August 30, 1995, after the parties agreed to submit the rest of the matter for a decision on the existing record in lieu of a trial, the circuit court denied any recovery from 1987–2 Limited and denied the motion to name 1987–2 Limited's general partners as additional parties, based on its ruling denying relief from 1987–2 Limited. The circuit court found:

> When executing the Harris/Cokely Contract and the Letter Amendment, Rare Earth Energy, Inc. was acting only on its own behalf and not for nor [sic] on behalf of nor [sic] as agent for any other entity, including Rare Earth Energy Drilling Program 1987–2 Limited Partnership.

After summary judgment was granted to 1987–2 Limited, Clint Hurt appealed to this Court. On appeal, Clint Hurt argues 1987–2 Limited, as the owner of the four wells, and all the individual general partners of 1987–2

---

**9.** The complaint states that Mr. Mutschelknaus and Ritchie Petroleum were joined because they retained and owned of record, certain interests and overriding royalties, which might be affected by a judicial sale of the wells. Neither was named as a defendant in the First Amended Complaint.

**10.** We note that the parties' briefs refer to some allegations of fraudulent transfer, which apparently is still pending before the circuit court. We decline to comment on these allegations because they do not involve 1987–2 Limited and are not pertinent to the issues in this case.

Limited[11] are also liable because 1987–2 Limited and its general partners must be considered one of the following: (1) co-tenants with Rare Earth, the judgment debtor; or, (2) mining partners with Rare Earth, acting as the operating partner; or, (3) partners with Rare Earth in a general partnership; or (4) joint venturers with Rare Earth. Clint Hurt also argues that 1987–2 Limited's general partners are also liable, and therefore, its motion to add them as party defendants should be granted.

## II.

## DISCUSSION

### A. Standard of Review

■ "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). *See Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 58, 459 S.E.2d 329, 335, *rehearing denied* (1995). Our traditional principle for granting summary judgment is stated in Syl. pt. 3 of *Aetna Casualty & Surety Co. v. Federal Ins. Co. Of N.Y.,* 148 W.Va. 160, 133 S.E.2d 770 (1963):

A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

*In accord* Syl. pt. 1, *Croston v. Emax Oil Co.,* 195 W.Va. 86, 464 S.E.2d 728 (1995); Syl. pt. 1, *Williams v. Precision Coil, Inc., supra;* Syl. pt. 2, *Painter v. Peavy, supra;* Syl. pt. 1, *Andrick v. Town of Buckhannon,* 187 W.Va. 706, 421 S.E.2d 247 (1992). *See Williams v. Precision Coil, Inc., supra* and *Painter v. Peavy, supra* for discussions of the principles for granting summary judgment.

Rule 56 (1978) of the West Virginia Rules of Civil Procedure is " 'designed to effect a prompt disposition of controversies on their merits without resort to a lengthy trial,' if there essentially 'is no real dispute as to salient facts' or if it only involves a question of law." *Williams v. Precision Coil, Inc.,* 194 W.Va. at 58, 459 S.E.2d at 335, *quoting,*

*Painter v. Peavy,* 192 W.Va. at 192 n. 5, 451 S.E.2d at 758 n. 5, *quoting Oakes v. Monongahela Power Co.,* 158 W.Va. 18, 22, 207 S.E.2d 191, 194 (1974). Subsection c of Rule 56 states, in pertinent part, that "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[2] In the case *sub judice,* the parties agree that there are no disputed facts. We note that one of the issues concerns the interpretation of written agreements. It is a settled principle, long recognized in this State that "[i]t is the province of the Court, and not the jury, to interpret a written contract." Syl. pt. 1, *Stephens v. Bartlett,* 118 W.Va. 421, 191 S.E. 550 (1937). *In accord* Syl. pt. 1, *Orteza v. Monongalia County General Hospital,* 173 W.Va. 461, 318 S.E.2d 40 (1984).

The *de novo* review standard, applied to a circuit court's entry of summary judgment, is also applied when this Court reviews questions of law. *Stephen L.H. v. Sherry L.H.,* 195 W.Va. 384, 396 n. 19, 465 S.E.2d 841, 853 n. 19 (1995); *State v. Honaker,* 193 W.Va. 51, 56, 454 S.E.2d 96, 101 (1994),

Guided by these principles, we examine the circuit court's granting of summary judgment.

### B. Agency Theory

#### 1. *Actual Authority*

■ Clint Hurt maintains that 1987–2 Limited is liable because William R. Spatafore signed the amendment letter either in his capacity as an Additional General Partner of 1987–2 Limited or as President of Rare Earth, in its capacity as 1987–2 Limited's Managing General Partner on behalf of 1987–2 Limited. We note that the amendment letter does not designate the capacity in which it was executed by Mr. Spatafore. *See supra* note 8 for the signature lines.

---

11. The circuit court, by order entered on August 30, 1995, also denied Clint Hurt's motion to amend its complaint to name 1987–2 Limited's general partners as additional defendants.

In *Thompson v. Stuckey,* 171 W.Va. 483, 487, 300 S.E.2d 295, 299 (1983), we stated:

> A principal is bound by acts of an agent if those acts are either within the authority the principal has actually given his agent, or within the apparent authority that the principal has knowingly permitted the agent to assume. *General Elec. Credit Corp. v. Fields,* 148 W.Va. 176, 133 S.E.2d 780 (1963). Furthermore, the actions and statements of an agent who has actual authority to enter into a contract on behalf of a principal will bind the principal to all the elements of that contract, even though particular statements may have been unauthorized. *McDonald v. Cole,* 46 W.Va. 186, 32 S.E. 1033 (1899).

First we consider whether Mr. Spatafore, acting as an Additional General Partner, could have bound 1987–2 Limited. According to Section 5.1 of the Agreement of Limited Partnership, the only general partner authorized to "conduct, direct and exercise full control over all activities" of 1987–2 Limited was the Managing General Partner, which was Rare Earth.[12] Section 5.1 of the Agreement of Limited Partnership specifically denies an Additional General Partner the power to bind 1987–2 Limited by providing, in pertinent part:

> The Additional General Partners have delegated all of their authority as General Partners, except as specifically provided for in the Partnership Agreement, to the Managing General Partner and have *no authority to bind the Partnership or other Partners.*

(Emphasis added.)

Based on the plain language of the partnership agreement, we agree with the circuit court that there was no actual authority for Mr. Spatafore, acting in his capacity as Additional General Partner, to bind 1987–2 Limited.

■ Similarly, the written agreements between Rare Earth and 1987–2 Limited do not provide actual authority for Rare Earth to bind 1987–2 Limited in the amendment letter. It is undisputed that Mr. Spatafore, as President of Rare Earth, had actual authority to bind Rare Earth by his signature on the amendment letter. The drilling agreement between Rare Earth and 1987–2 Limited of December 31, 1987 made Rare Earth, as a separate entity, solely responsible for the drilling and completion of the four wells. Section 3 of the drilling agreement provided that Rare Earth, as the provider of turnkey drilling services, was "solely responsible for the drilling and Completion of the Wells pursuant to the terms of this Agreement."

Before the drilling agreement, Rare Earth, as Managing General Partner, had the actual power under the partnership agreement to bind 1987–2 Limited to a drilling contract, but that power to bind ended when Rare Earth contracted as an independent contractor to drill the four wells. Section 18 of the drilling agreement provided:

> It is expressly understood that Rare Earth is and shall remain an independent contractor with respect to the services to be performed for the Partnership hereunder and that all persons employed by Rare Earth in connection with the services herein are Rare Earth employees and *under no circumstances shall Rare Earth or any of its agents or employees be deemed or represent that they are employees or agents of the Partnership.*

(Emphasis added.)

■ Given the plain language of the drilling agreement, we agree with the circuit court that there was no actual authority for Mr. Spatafore, acting a President of Rare Earth, which, in turn, was alleged to be acting as Managing General Partner for 1987–2 Limited, to bind 1987–2 Limited in August 1988, to a drilling contract with Clint Hurt.

---

**12.** Nothing in the record indicates whether the partnership agreement or any of the contracts it entered into with Rare Earth were public documents to the extent that Clint Hurt could have actual or constructive knowledge of them. The partnership agreement was filed in the Office of the Secretary of State of West Virginia on January 5, 1988. We discuss the language of these documents only to demonstrate the lack of actual authority in the Managing General Partner to bind the partnership.

## 2. *Apparent Authority*

In addition to actual authority, an agent can bind a principal based on apparent authority, which the principal has knowingly permitted an agent to assume. Apparent or ostensible authority results from "statements, conduct, lack of ordinary care, or other manifestations of the principal's consent, whereby third persons are justified in believing that the agent is acting within his authority. (Footnotes omitted.)" 3 Am. Jur.2d, *Agency* § 79 (1986), *citing,* Restatement, *Agency* 2d § 27.

■ Syllabus Point 3 of *Thompson v. Stuckey, supra,* recognizes that agency can be established by the principal's acts or conduct by stating:

"One who by his acts or conduct has permitted another to act apparently or ostensibly as his agent, to the injury of a third person who has dealt with the apparent or ostensible agent in good faith and in the exercise of reasonable prudence, is estopped to deny the agency relationship." Syl. pt. 1, *General Electric Credit Corp. v. Fields,* 148 W.Va. 176, 133 S.E.2d 780 (1963).[13]

■ In this case, we examine the record to determine if the principal, 1987–2 Limited, by its acts or conduct, permitted another, Rare Earth, to act apparently or ostensibly as its agent to the injury of a third party, Clint Hurt. We note that Clint Hurt, the President of Clint Hurt, testified that he thought he was contracting with Rare Earth and did not know who owned the four wells.[14] Additional evidence that Clint Hurt did not know who owned the four wells comes from its original complaint where it erroneously named Rare Earth Drilling Program 1985–3 Limited Partnership and Rare Earth Drilling Program 1986–3 Limited Partnership as defendants. Mr. Spatafore testified that he signed the amendment letter on behalf of Rare Earth, acting as the independent contractor required to drill the four wells by the drilling agreement. Neither party to the amendment letter believed that 1987–2 Limited was a party to or bound by the amendment letter.

The conduct of the parties confirms that Clint Hurt thought it was contracting with Rare Earth and *not Rare Earth as agent* for 1987–2 Limited. The "Harris–Cokely Contract," which is extended by the amendment letter, was between Clint Hurt and Rare Earth, and concerned the drilling of wells not owned by 1987–2 Limited. When the amendment letter was signed in August 1988, the four wells had already been completed. Clint Hurt addressed and sent all invoices and correspondence about payment for the drilling of the four wells to Rare Earth.

The circuit court found the course of dealings among the parties "to be most salient," because Clint Hurt "always dealt with Rare Earth.... Its course of dealings, in terms

---

**13.** According to 3 Am.Jur.2d, *Agency* § 80 (1986), the following prerequisites are needed to establish that an agent has apparent authority to do the act in question:

"(1) [T]hat the principal has manifested his consent to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; (2) that the third person knew of the facts and, acting in good faith, had reason to believe, and did actually believe, that the agent possessed such authority; and (3) that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal."

(Footnotes omitted.)

**14.** In a deposition taken on March 11, 1994, Mr. Hurt gave the following testimony:

Q. As to those six wells, covered in the 1987–2 drilling program, who did you believe that you were contracting with for the drilling of those wells?

A. We were contracting with Rare Earth Energy, Inc., and I was aware that they used limited partnership format for the drilling of a lot of their wells, because Bill and I had discussed that in the past, Bill Spatafore. So I was aware that we were working for Rare Earth as operator for Limited Partnerships.

Q. Okay. It was customary, then, for you to know that there would be a limited partnership involved, but you might not know particularly which?

A. Yeah. I knew that Bill had raised money for drilling wells, as private investors, as selling this thing through broker dealers. I didn't ever inquire as to which particular structure he was in, but yeah, I was aware that there were outside investors, both public and private.

of whom Clint Hurt thought it was dealing with, whose obligations and rights the plaintiff felt it was affecting by its transactions with the Spatafores and Rare Earth Energy Inc., was a corporation."

The parties' relationship extended for over ten years and during that time there were 64 wells drilled, some of which were drilled after August 23, 1988, the date of the amendment letter. According to the Mr. Hurt, he knew that Rare Earth did not own any of the wells to be drilled, but knew that the wells were owned by investors, often utilizing a limited partnership format. Finally, the amendment letter did not specifically identify the four wells; but rather, covered any "[a]dditional wells [drilled] in the same general area" as the Harris # 1 and Cokely # 1 wells.

We have long held that when a person is dealing with an agent acting under written authority, that person must take notice of the extent and limits of the agent's authority. Syl. pt. 1 of *Uniontown Grocery Co. v. Dawson*, 68 W.Va. 332, 69 S.E. 845 (1910) states:

> The general rule is that one dealing with an agent is bound at his peril to know the agent's authority. If in writing, he is presumed to have read his warrant of authority.

In *Merchants' Bank & Trust Co. v. People's Bank*, 99 W.Va. 544, 565, 130 S.E. 142, 150 (1925), we found that the cashier of a bank, who without authority issues and delivers a certificate of deposit to another who made no deposit of money, is considered to be acting as the bank's agent; however, because "a person dealing with an agent, knowing that he acts only by virtue of a delegated power, must at his peril see that the paper on which

he relies comes within the power under which the agent acts." Thus, when Clint Hurt was dealing with Rare Earth, Clint Hurt has the responsibility to see that Rare Earth's actions do not exceed the power delegated to it. In this case, the written agreements, namely the drilling agreement and the partnership agreement, limit Rare Earth's function to that of an independent contractor for drilling, which, in turn insulates 1987–2 Limited from liability.[15]

### C. Mining Partnership

On appeal, Clint Hurt maintains under the theory of mining partnership, 1987–2 Limited is liable, as a matter of law, for the cost of drilling the four wells. Clint Hurt argues that 1987–2 Limited and its "General Partners must be considered as co-tenants with judgment debtor Rare Earth; as mining partners with Rare Earth who acts as the operating Partner; as partners with Rare Earth in a general partnership; or as joint venturers with Rare Earth." Clint Hurt argues that 1987–2 Limited should not be treated as a limited partnership but rather as "mining partners[, through application of any of the above listed designations] and liable for the debts where third parties have been damaged." The appellee argues that the mining partnership theory requires the mining partners, however they are labeled, to have a common ownership of the mineral interest. The appellee maintains that it, 1987–2 Limited, and it alone, owned all of the mineral interest in the four wells and did not share any ownership with Rare Earth. Both parties rely on our case of *Manufacturers Light & Heat Co. v. Tenant*, 104 W.Va. 221, 139 S.E. 706 (1927).[16]

---

**15.** Limiting the authority of Rare Earth to act as an agent for the owners of the four wells, does not mean that Clint Hurt could not have recovered from 1987–2 Limited, the owner of the four wells through a subcontractor's lien under W. Va.Code 38–2–2. However, a subcontractor's lien is wholly statutory and must be perfecting within the period provided in W. Va.Code 38–2–7 (1923), which provides, in pertinent part:

> ... [t]he lien created and authorized by section two [§ 38–2–2] of this article shall be discharged from and after sixty days from the completion of such subcontract....

Both parties agree that Clint Hurt failed to avail itself of its statutory remedy. In *Woodford*

*v. Glenville State College Housing Corp.*, 159 W.Va. 442, 449, 225 S.E.2d 671, 675 (1976), we found that the contractor's failure to assert a statutory lien, forfeited "any and all rights which he may have had against the project to enforce his claim. Consequently, he (the materialman) is now left only with the remedy of suing ... [the sub-contractor to whom he provided materials] on his original contract."

**16.** Clint Hurt emphasizes Syl. pt. 2 of *Manufacturers' Light & Heat*, which provides:

> One dealing with a partner, without knowledge of any partnership agreement limiting the authority of such partner, may presume that

 We note that the mining partnership recovery theory was not raised below. Generally, we have declined to considered nonjurisdictional questions that have not been considered by the trial court. We have long held that theories raised for the first time on appeal are not considered. In Syl. pt. 3 of *Bush v. Ralphsnyder,* 100 W.Va. 464, 130 S.E. 807 (1925), we stated:

> When a party relies in trial court upon a specific ground for relief or in defense, he is bound thereby, and will ordinarily be refused relief in the appellate court on any position inconsistent therewith.

In *Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993), we gave the following reasons for our refusal to consider new issues on appeal:

> The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom.

*See Shrewsbury v. Humphrey,* 183 W.Va. 291, 395 S.E.2d 535 (1990); *Cline v. Roark,* 179 W.Va. 482, 370 S.E.2d 138 (1988); *Crain v. Lightner,* 178 W.Va. 765, 364 S.E.2d 778 (1987); *Trumka v. Clerk of the Circuit Court of Mingo County,* 175 W.Va. 371, 332 S.E.2d 826 (1985).

In this case, we decline to address this new theory of recovery, which was raised for the first time on appeal. Clint Hurt failed to present the theory below and although the facts are not disputed, the circuit court was not given the opportunity to consider the facts relevant to this new theory. Because the theory was not refined, developed or adjudicated by the circuit court, we refuse to proceed to an ultimate resolution in this Court.

For the above stated reasons, we affirm the decision of the Circuit Court of Ritchie County.

Affirmed.

the latter has authority to bind the firm by all acts necessary for carrying on the business in the usual way.

The appellee emphasizes the co-ownership requirement found in Syl. pt. 1 of *Manufacturers' Light & Heat,* which provides:

While *co-owners or joint owners* of a mining lease, before they operate for oil or gas, are tenants in common or joint tenants, when they unite and co-operate in working the lease, they constitute a mining partnership.