# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Randy Michael Brodnik, D.O. and**
**Bluefield Women's Center, P.C.,**
**Plaintiffs Below, Petitioners**

**vs.)  No. 17-1107** (Mercer County 12-C-386)

**Robert J. Stientjes, Anthony Gasaway,**
**and Michael Gibson,**
**Defendants Below, Respondents**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Randy Michael Brodnik, D.O., and Bluefield Women's Center, P.C., by counsel Paul J. Harris and Shawn L. Fluharty, appeal the Circuit Court of Mercer County's September 3, 2017, award of summary judgment to respondents on petitioners' claims for legal malpractice and the circuit court's November 17, 2017, award of sanctions, including default judgment and attorney's fees, to respondents. Respondents Robert J. Stientjes, Anthony Gasaway, and Michael Gibson, by counsel J.H. Mahaney and Derrick W. Lefler, filed a response in support of the circuit court's orders. Petitioners filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner Randy Brodnik ("Dr. Brodnik") is a doctor of osteopathic medicine and, at all times relevant hereto, practiced medicine at Bluefield Women's Center, P.C. ("BWC"). Around 1998, Dr. Brodnik and his advisor allegedly set about creating a "tax shelter" in order to "conceal from the [Internal Revenue Service ("IRS")] more than $5 million in income and evade [paying] more than $2 million in income taxes."

In early 2003, the IRS began a nationwide "initiative to stop the proliferation of tax evasion through the use of illegal tax shelters." Before issuing indictments arising from the use of tax shelters, the IRS allowed participants in such shelters to avoid criminal prosecution by

1

participating in an "amnesty program," which expired on April 15, 2003. Against the advice of his accountants, Dr. Brodnik failed to enroll in that amnesty program.

In August of 2003, the IRS's Criminal Investigation Division raided Dr. Brodnik's home and the offices of BWC. The IRS seized thousands of documents and interviewed a number of witnesses, including many of Dr. Brodnik's friends, family, employees, and "associates all over the world." During the raid, the IRS discovered evidence, including a letter indicating that Dr. Brodnik terminated the services of his accounting firm after it provided him with amnesty program information.

As a result of the IRS investigation, on March 18, 2009, the Department of Justice ("DOJ") filed an indictment against Dr. Brodnik in the United States District Court for the Southern District of West Virginia, charging him with one felony count of conspiracy and six felony counts of tax evasion. The indictment alleged that from 1998 through 2003, Dr. Brodnik used "sham contracts, international nominee bank accounts, trusts, shell corporations and other [offshore] conduit entities" to conceal from the IRS more than $5.5 million in income and evade paying more than $2.2 million in income tax. The indictment further alleged that Dr. Brodnik used "phony loan documents" to "surreptitiously repatriate nearly $1 million of his funds . . . under the pretense and guise that the repatriated funds were 'loans.'"

In November of 2004, Dr. Brodnik retained attorney Anthony Gasaway to represent him in the criminal action brought by the DOJ. Attorney Robert Stientjes, the then law partner of Attorney Gasaway, later became involved in the representation of Dr. Brodnik.[1] Attorney Michael Gibson also became involved in Dr. Brodnik's criminal defense and acted as local counsel. Attorneys Gasaway, Stientjes, and Gibson are collectively referred to as "respondents."

Respondents filed two motions to dismiss the indictment against Dr. Brodnik, but the same were denied by the federal court. Respondents renewed Dr. Brodnik's motions to dismiss in September of 2010, but the motions were again denied. Following a three-week trial, Dr. Brodnik was acquitted on all charges.

Respondents contend that they worked hundreds of hours throughout the investigation and proceedings associated with Dr. Brodnik's criminal trial and were owed more than $650,000 in fees and expenses. However, following his acquittal, Dr. Brodnik refused to pay respondents. When respondents asserted their claim for fees against Dr. Brodnik, he alleged that respondents had committed legal malpractice.

On July 19, 2012, following a dispute between Dr. Brodnik and respondents related to $21,989 in funds that Attorney Stientjes held in his firm's client trust account, to which Dr. Brodnik laid claim, petitioners filed the underlying action in the Circuit Court of Mercer County,

---

[1]Attorney Stientjes joined Attorney Gasaway's firm in June of 2005. Upon joining the Gasaway firm, Attorney Stientjes joined in the representation of Dr. Brodnik.

asking the court to order that the funds held by Attorney Stientjes be released to Dr. Brodnik.[2] In April of 2013, Attorney Stientjes filed a counterclaim against petitioners and Attorneys Gasaway and Gibson filed an intervening complaint against petitioners "for breach of contract and restitution" to recover unpaid legal fees in connection with pre- and post-trial work performed for Dr. Brodnik. Attorney Stientjes alleged that he was owed attorney's fees totaling $96,411; Attorney Gasaway alleged that he was owed attorney's fees of $470,625; and Attorney Gibson alleged he was owed attorney's fees totaling $91,462.

In January of 2014, petitioners filed counterclaims against respondents asserting respondents' legal malpractice. In their malpractice claim, petitioners alleged that Attorneys Gasaway and Stientjes caused Dr. Brodnik "to be indicted and suffer damages by failing to provide timely tax advice relating to an amnesty program aimed at voluntarily disclosing OEL Tax Shelter Involvement." However, the amnesty program expired in April of 2003, more than nineteen months before Dr. Brodnik retained respondents. Further, Dr. Brodnik alleged that respondents were negligent with respect to the timeliness of the filing of a post-acquittal Hyde Amendment motion to seek, from the United States, reimbursement of a portion of Dr. Brodnik's attorney's fees.[3] Dr. Brodnik claimed $10 million in damages. Ultimately, respondents moved for summary judgment as to Dr. Brodnik's legal malpractice claims. Following extensive briefing and oral argument, the circuit court, on September 13, 2017, entered its order awarding respondents summary judgment as to petitioners' claims for legal malpractice.

During discovery in the underlying litigation, respondents served petitioners with several sets of written discovery requests. Petitioners "consistently ignored" the discovery deadlines, and respondents were forced to file multiple motions to compel. Discovery responses due in February and March of 2017 were still not provided in June of 2017, despite efforts on behalf of respondents' counsel to solicit the responses. A hearing on respondents' motion to compel was held in July of 2017. By order entered on September 13, 2017, the circuit court granted respondents' motion to compel, which provided seven days for petitioners to provide complete responses to the outstanding discovery requests. However, petitioners failed to comply.

---

[2]As opposed to ordering the relief requested by petitioners, the circuit court granted Attorney Stientjes's request to deposit the exact amount in dispute, $21,989, into the court in accordance with Rule 67 of the West Virginia Rules of Civil Procedure. The funds were to be held by the court until the parties resolved their dispute.

[3]The Hyde Amendment is not codified, but rather set forth in the legislative notes following 28 U.S.C. § 3006A. The legislative notes state, in pertinent part, as follows:

> During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) . . . may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust.

Instead of immediately moving for sanctions for petitioner's noncompliance, respondents waited an additional twenty-seven days for responses from petitioners, but none were forthcoming. Ultimately, respondents filed a motion for sanctions, pursuant to Rule 37 of the West Virginia Rules of Civil Procedure, against petitioners. In response to the motion for sanctions, petitioners incorrectly advised the court that "the necessary discovery responses have been served upon [respondents] and filed with the court."

An evidentiary hearing on respondents' motion for sanctions was set for October 30, 2017. On the Friday before the Monday hearing, petitioners filed supplemental answers to the outstanding discovery requests and an additional response to the motion for sanctions. In that response, petitioners' counsel blamed the previous failure to respond to discovery "on the pregnancy of an associate in" petitioners' counsel's office, an attorney who had never made an appearance in the case. No affidavits or other evidence were offered in support of petitioners' averments.

At the October 30, 2017, evidentiary hearing, in which petitioners' counsel participated by telephone, petitioners' counsel did not produce a single document in connection with the outstanding discovery responses, despite the fact that the answers were due in February of 2017. Attorney Gasaway testified at the hearing, providing details regarding his background and discussing his extensive work on this case as well as the parties' various agreements as to attorney's fees. Petitioners' counsel did not cross-examine Attorney Gasaway or any of the other witnesses offered by respondents. In fact, when petitioners' counsel was presented with the opportunity to offer evidence during the hearing, he "affirmatively declined to do so." Petitioners' counsel offered no oral arguments but simply indicated to the court that petitioners "would rely on their October 27, 2017 response brief."

On November 17, 2017, the circuit court found for respondents and issued sanctions, pursuant to Rule 37 of the West Virginia Rules of Civil Procedure, against petitioners, resulting in default judgment to respondents for the legal fees owed by petitioners, plus pre-judgment interest. The court ruled that the $21,989 deposited into the registry of the court by Attorney Stientjes would be an offset against the judgment. In its November 17, 2017, order, the circuit court specifically found Dr. Brodnik's conduct to be "willful, intentional and in bad faith." The court found that Dr. Brodnik had, in regard to discovery matters, failed to comply with the West Virginia Rules of Civil Procedure or the orders of the court, which resulted in repeated delay "for the obvious purpose of not paying any of the" attorney's fees for the attorneys who "represented him in his acquittal on numerous federal tax felonies." The court characterized Dr. Brodnik's actions as intolerable and an impediment to the administration of justice and the sanctity of established rules and order governing litigation.

It is from the circuit court's September 13, 2017, and November 17, 2017, orders that petitioners now appeal. On appeal, petitioners assert five assignment of error, which we will address in turn.

First, petitioner contends that the circuit court erred in granting respondents' motions for summary judgment and in dismissing petitioners' legal malpractice claims. This argument is similar to the argument petitioners assert in their fourth assignment of error, that the circuit court

4

erred in failing to permit a jury trial on petitioners' malpractice claims. Given the similar nature of these assignments of error, we will address them together. This Court has long held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Further, we have held that

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove."

Syl. Pt. 4, *Painter*.

Here, we find that the circuit court did not err in awarding summary judgment to respondents as to petitioners' claims for legal malpractice. In order to establish a claim for legal malpractice, a plaintiff must prove that the attorney's negligence was the proximate cause of the loss the plaintiff suffered and that but for the negligence of the lawyer, he or she would not have suffered those damages. *Calvert v. Scharf*, 217 W. Va. 684, 619 S.E.2d 197 (2005).

Generally, respondents argue that the award of summary judgment in their favor was proper for several reasons: (1) petitioners failed to state a valid claim for legal malpractice; (2) petitioners were not injured by any act or omission of the respondents who secured Dr. Brodnik's complete acquittal of all criminal charges; and (3) respondents' actions are not the proximate cause of petitioners' alleged injuries, which petitioners acknowledge were directly caused by the IRS investigative techniques.

Petitioners advance two theories of legal malpractice herein. The first is associated with the timing and payment of taxes. The second relates to respondents' alleged failure to file a Hyde Amendment motion. With regard to the timing and payment of taxes, petitioners could not establish that but for the alleged negligence of respondents, the DOJ would not have indicted Dr. Brodnik and he would not have incurred penalties and interest. The indictment returned against Dr. Brodnik clearly alleges that the doctor owed substantial amounts in taxes for the years 1998 through 2002. Respondents did not even become involved in the case until 2005. As such, petitioners' claim for legal malpractice fails as a matter of law.

With regard to the Hyde Amendment argument, petitioners have the burden of proving that "but for" the alleged negligence of respondents in allegedly failing to timely file the Hyde Amendment motion the federal court would have granted petitioners their requested relief under the Hyde Amendment. There is no support in the record for petitioners' position. As the circuit court reasoned, the federal court's denial of Dr. Brodnik's motion for acquittal at trial on all counts forecloses a finding of frivolousness necessary to sustain a successful Hyde Amendment motion. Accordingly, we find no error in the circuit court's award of summary judgment to respondents as to petitioners' claims for legal malpractice.

In their second assignment of error, petitioners allege that the circuit court erred in setting a sum certain recoverable for attorney's fees without reviewing any invoices, giving no credit to sums already paid by petitioners, and accepting facts misrepresented by respondents. This Court

has explained that "[t]ypically, we have reviewed reasonableness of the amount of an award of attorney's fees for an abuse of discretion." *Daily Gazette Co., Inc., v. W. Va. Dev. Office*, 206 W. Va. 51, 57, 521 S.E.2d 543, 549 (1999). Here, petitioners argue that the attorney's fees awarded to respondents are "excessive, unwarranted, and unearned." This Court has held that

> "'""'the trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, [sic] and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion.' Syllabus point 3, [in part,] *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959)." Syl. Pt. 2, [in part,] *Cummings v. Cummings*, 170 W.Va. 712, 296 S.E.2d 542 (1982) [(per curiam)].' Syllabus point 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993)." Syllabus point 2, *Daily Gazette Co., Inc. v. West Virginia Development Office*, 206 W.Va. 51, 521 S.E.2d 543 (1999).

Syl. Pt. 3, *Pauley v. Gilbert*, 206 W. Va. 114, 522 S.E.2d 208 (1999).

While petitioners devote a substantial portion of their brief to arguments attacking the appropriateness of the judgment amounts, at no time during the sanctions briefing or at the hearing did petitioners advance such arguments. This Court has reasoned that a party on appeal cannot rely upon arguments or evidence that were not considered by the circuit court below. *See generally*, *Zaleski v. W.Va. Mut. Ins. Co.*, 224 W.Va. 544, 687 S.E.2d 123 (2009).[4] Petitioners now seek to criticize respondents' invoices but declined the opportunity to do so during the hearing below. Accordingly, we will not address petitioners' arguments in this regard on appeal.

Next, petitioners contend that the circuit court erred in awarding relief to respondents against petitioner BWC. Petitioners argue that the award of attorney's fees to respondent against petitioner BWC was improper, as there was no fee agreement between BWC and respondents. Further, BWC was not a party to the federal case wherein the attorney's fee dispute arose. However, petitioners did not raise this issue before the circuit court. As noted above, this Court has long reasoned that "[o]ne of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result in the imposition of a procedural bar to an appeal of that issue." *State v. LaRock*, 196 W. Va. 294, 316, 470 S.E.2d 613, 635 (1996) (internal quotations and citation omitted). It is the general rule of this Court "that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Here, petitioners did not argue before the circuit court that an award of attorney's fees against BWC was improper. Accordingly, we will not consider this issue on appeal.

In their final assignment of error, petitioners argue that the circuit court erred in awarding default judgment and sanctions against petitioners for simple "discovery infirmities." In support,

---

[4] "[W]hen an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal." *Clint Hurt & Assoc. v. Rare Earth Energy, Inc.*, 198 W. Va. 320, 329, 480 S.E.2d 529, 538 (1996).

6

petitioners cite *Foster v. Good Shepherd Interfaith Volunteer Caregivers, Inc.*, 202 W. Va. 81, 84, 502 S.E.2d 178, 181 (1998), in which this Court noted that "[t]he rendering of judgment by default under West Virginia Rules of Civil Procedure, Rule 37, was . . . considered one of the harshest of sanctions and that this sanction 'should be used sparingly and only in extreme situations' because the policy of law favors disposition on their merits."

While default judgment is undoubtedly a harsh sanction, we do not find that under the facts and circumstances of this case the same was unwarranted. Here, the motion to compel outstanding discovery at the October 30, 2017, sanctions hearing was not moot. Had it been moot, the circuit court would not have entered an order for sanctions. Petitioners advanced no arguments at the hearing that the motion was moot, despite being provided ample opportunity to do so. The circuit court made specific findings regarding petitioners' pattern of conduct and determined that the same warranted harsh sanctions. Specifically, the court found that petitioners had employed "intentional evasive delay tactics [that] prejudiced respondents and violated the canons of administering justice." Accordingly, we find no error in the award of sanctions against petitioners, including default judgment and attorney's fees.

For the foregoing reasons, we affirm the Circuit Court of Mercer County's September 3, 2017, award of summary judgment to respondents on petitioners' claims for legal malpractice and the circuit court's November 17, 2017, award of sanctions, including default judgment and attorney's fees, to respondents.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

7