473 S.E.2d 131

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Roger Dale KNUCKLES, Defendant Below, Appellant.**

No. 23084.

Supreme Court of Appeals of West Virginia.

Submitted May 1, 1996.

Decided May 17, 1996.

Jacquelyn I. Custer, Special Assistant Attorney General, Charleston, for Appellee.

Barry L. Bruce, Barry L. Bruce & Associates, Lewisburg, for Appellant.

PER CURIAM:

This is an appeal from convictions arising out of the DUI related deaths of three women. The defendant, Roger Dale Knuckles, prosecutes this appeal of his convictions by a jury on three counts of violating W.Va.Code, 17C–5–2(a) (1986).[1] The trial court sen-

---

1. W.Va.Code, 17C–5–2(a) provides in relevant part:

(a) Any person who:
(1) Drives a vehicle in this state while:
(A) He is under the influence of alcohol [and]

\* \* \* \* \* \*

(2) When so driving does any act forbidden by law or fails to perform any duty imposed by law in the driving of such vehicle, which act or failure proximately causes the death of any person within one year next following such act or failure; and

(3) Commits such act or failure in reckless disregard of the safety of others, and when the influence of alcohol ... is shown to be a contributing cause to such death, shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary for not less than one nor more than ten years and shall be fined

tenced the defendant to three consecutive terms of one-to-ten years imprisonment, and imposed a fine of $3,000 on each count. On appeal, the defendant has raised five assignments of error: (1) it was error for the court to question a state's witness during trial deposition testimony; (2) it was error to admit the defendant's blood alcohol test results into evidence; (3) it was error to exclude from evidence defendant's Exhibit No. 8; (4) it was error to deny defendant's motion for acquittal; and (5) the cumulative effect of the court's errors denied the defendant a fair trial. We affirm the conviction in all respects.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The facts of this case begin at approximately 10:30 a.m. on November 14, 1993. At that time, the defendant and two companions, his brother Melvin Knuckles and their friend Joey Pitts ("Pitts"), began drinking, and consumed a twelve-can pack of beer as they drove around Monroe County in the defendant's truck. Shortly after 1:00 p.m., Melvin Knuckles parted with the defendant and Pitts and went home. The defendant and Pitts then drove to the home of Eugene Knights ("Knights"). The defendant parked his truck at Knights' home. The three men then got into Knights' car and drove to a jail in the town of Union to visit a friend of Knights. Pitts testified that on the way to the jail the three men each drank about "two or three" cans of beer they had obtained. During the trial there was testimony by the jail attendant which indicated that the defendant "had a very strong odor of alcohol on his breath," was "extremely loud and used a lot of profanity," and "[a]ppeared to me to be drunk." The three men left the jail and returned to Knights' home. Pitts testified that the defendant drank two more cans of beer before they left Knights' home, and drove to the home of Linda Bowling. According to Linda Bowling, the defendant appeared to be drinking, had trouble getting into his truck, and almost ran into another vehicle when they left her home.[2] Pitts testified that he and the defendant drove next to the home of Bessie Morris. The two men consumed "one or two" cans of beer each while en route to Bessie Morris' home. While at her home the two men once again consumed "one or two" cans of beer. They left Bessie Morris' home after about a half hour.

The two men next headed to the home of Junior Lee Morris ("Morris"). Pitts testified that he and the defendant drank two cans of beer while driving to the home of Morris. It was approximately 4:30 p.m. when the two men picked up Morris at his home and drove over to Princeton. The evidence indicated that at various times Pitts and Morris drove the defendant's truck because of erratic driving by the defendant. While the three men were in Princeton they purchased and consumed an unspecified quantity of beer. The evidence revealed that the defendant insisted upon driving once the three men decided to leave Princeton, and drive over to Peterstown. Morris testified that the defendant "was driving real fast," and "he was weaving across the lines, and I would reach over and jerk him back in the road and keep him from hitting guard rails and everything." Before reaching Peterstown, the three men purchased and consumed a twelve-can pack of beer. Pitts testified regarding defendant's driving at this time, that "he was driving recklessly," that he "was speeding and weaving on and off the road and passing a few cars at a time," and that "he almost hit a car." At approximately 8:00 p.m. the defen-

---

not less than one thousand dollars nor more than three thousand dollars.

2. Linda Bowling gave the following account of her actions after the defendant and Pitts left her home:

Q. Did you make a phone call after Mr. Knuckles left your house?
A. Yes, ma'am, I did. I called Union, the dispatch office.

Q. And why did you do that?
A. Because I thought he might be drinking and I didn't want nobody hurt or nothing like that, but I did call the dispatch office in Union.
Q. Why did you think he had been drinking?
A. The way he had went out of my house and revving his motor.

dant and Pitts dropped Morris off at his home. The defendant then drove to the home of Kenneth Cecil to obtain more beer. Pitts testified that he wanted to go home, but that the defendant would not take him home. Therefore, when they arrived at Kenneth Cecil's home, Pitts parted with the defendant and walked approximately six miles to his home. The defendant left the home of Kenneth Cecil at about 9:00 p.m.

Shortly after the defendant left the home of Kenneth Cecil, while on U.S. Route 219, near Hines Place Road, he lost control of his truck, crossed the center line and struck an on-coming car containing three women who had been returning from evening church services. Two of the women, Cordelia Styles and Betty Bales, died at the scene of the accident. The third woman, Mary "Goldie" Jones died several hours later at Roanoke Memorial Hospital. Physical evidence at the accident scene indicated that defendant's truck entered a curve too fast, dropped off the right shoulder of the road, began a "yaw" and crossed over the center line into the victims' car. There was no indication that defendant had applied his brakes. The paramedic and emergency medical technicians who ministered to the defendant at the scene noted an odor of alcohol on his breath. After receiving first aid at the scene, defendant was taken by helicopter to Roanoke Memorial Hospital. Upon his admission to the emergency room, blood samples were taken from the defendant as part of the hospital's routine procedure in trauma cases.

On January 11, 1994, a Monroe County grand jury issued a three-count indictment against the defendant charging him with violating W.Va.Code, 17C–5–2(a). The case was set for trial on June 28, 1994, however, during the course of jury selection, it became apparent that it would be difficult to select a fair and impartial jury in Monroe County.

Therefore, on a motion by the defendant, venue for the trial was changed to Summers County.[3] Two out-of-state medical witnesses, phlebotomist Mary Lee Bohm and lab technician David Murray, were present at the June 28 mistrial. In order to take advantage of their presence, the trial court conducted a hearing on a suppression motion by the defendant, regarding blood alcohol testing done by Ms. Bohm and Mr. Murray. The parties agreed that if the trial court saw "fit to let the testimony of these witnesses in, we will treat this as a trial deposition, and the testimony can be transcribed, read to the jury, and these witnesses will not have to appear [at trial]." The second trial started in Summers County on February 14, 1995. On February 17, 1995, the jury returned a verdict of guilty on all three counts of the indictment. On March 13, 1995, the trial court sentenced the defendant to three consecutive terms of one-to-ten years in prison and imposed a fine of $3,000 on each count. Execution of the sentence was stayed and the defendant released on bond pending the outcome of this appeal.

## II.

## ANALYSIS

### 1.

### *Improper Questioning by Judge*

The first argument raised by the defendant is that the trial court improperly questioned Ms. Bohm during the trial deposition on June 28, 1994. The defendant contends that the state did not establish a proper foundation to admit the blood alcohol test results of the defendant taken at Roanoke Memorial Hospital, and that the trial court improperly conducted an extended examination of Ms. Bohm in an attempt to rehabilitate her and establish the foundation that the

---

**3.** The trial court summarized the matter as follows:

"Let me say again for the record here, that after proceeding through the entire panel of jurors, that we ended up with seventeen who had not been excused for cause.

"There were two more challenges for cause pending, and the Court really didn't rule on those, but there was certainly reason to grant

the challenge for cause which would have left us with only fifteen jurors at that time, and the Court simply finds that there is apparently some difficulty in selecting a jury in this county, in Monroe County.

"And on the motion of the defendant, for a change of venue, the Court declares a mistrial in this case and grants the motion for change of venue[.]"

state had failed to lay.[4] The defendant takes the position that, if the trial court had not intervened and began questioning Ms. Bohm to lay a proper foundation, the blood alcohol test results would not have been allowed into evidence. In support of this contention, the defendant cites *Nash v. Fidelity–Phenix Insurance Company*, 106 W.Va. 672, 146 S.E. 726 (1929), for the proposition that a trial court may question a witness to clear up an obscure point, but not engage in an extended examination of a witness, as is alleged here.[5] The defendant also cites *State v. Bennett*, 172 W.Va. 131, 304 S.E.2d 35 (1983), as prohibiting a trial court from rehabilitating a witness, as is contended here.[6] We need not be detained by *Nash* and *Bennett* because they cannot be harmoniously juxtaposed to the facts under review here.

 We find no merit to the defendant's argument. First, the foundation for the blood alcohol test evidence was established by the testimony of Mr. Murray who identified the blood alcohol test results. It was during his testimony that the results were actually admitted into evidence. Thus, the trial court's questioning of Ms. Bohm was not critical to the case and it had no significant bearing on the admissibility of the evidence. Second, the defendant failed to take advantage of ameliorating measures made available to him by the trial court. During the trial the court responded to the defendant's concern that it would be prejudicial to have the court read its part of the trial deposition questioning of Ms. Bohm, by offering the parties the option of stipulating to the blood alcohol test results or have one of the parties read the questions which had been propounded by the court at the trial deposition. The defendant objected to both options and insisted that the testimony be read as solicited at the trial deposition. The trial court warned the defendant that by taking this route he "was waiving the right to object." The defendant made a strategic decision not to avail himself of the trial court's offer and allowed the deposition of Ms. Bohm to be read in its original form to the jury. This assignment of error need not detain us further. It is fundamental that a defendant must live by his trial decisions. As we stated in *McDougal v. McCammon*, 193 W.Va. 229, 239, 455 S.E.2d 788, 798 (1995), a defendant " 'cannot ... be allowed to alter retroactively [his] trial strategy.' " Quoting *DeBenedetto v. Goodyear Tire & Rubber Co.*, 754 F.2d 512, 518 (4th Cir.1985). In Syllabus Point 21 of *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966), this court stated: "A judgment will not be reversed for any error in the record introduced by or invited by the party asking for the reversal." *See* Syl. Pt. 2, *Young v. Young*, 194 W.Va. 405, 460 S.E.2d 651 (1995); Syl. Pt. 1, *Jennings v. Smith*, 165 W.Va. 791, 272 S.E.2d 229 (1980); Syl. Pt. 1, *State v. Bosley*, 159 W.Va. 67, 218 S.E.2d 894 (1975). *See also* 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, § 1–7(B)(6)(e) (3d ed.) (1994). In addition, the response the defendant gave to the trial court constitutes an "intentional relinquishment" of the defendant's known right to an objection based upon alleged improper questioning by the trial court. *See State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). He, therefore, waived the objection, and waiver necessarily precludes salvage by plain error review.

4. The defendant objected at the trial deposition to the court's questioning of Ms. Bohm. The court overruled the objection based upon the following grounds:

"Well, the Court always has the inherent ability to ask questions, and the Court is being asked to rule on the admissibility of the blood test, and the Court feels that the Court hasn't received a sufficient evidentiary record to make this decision, and the Court is simply exercising its inherent authority to ask these questions. I think that the Court always has that ability.

"It's not normally exercised in every case, but the Court feels this is an appropriate time to exercise that, because I don't have a sufficient ground to rule on this motion[.]"

5. The state correctly points out in its brief that the trial court's questioning was proper pursuant to Rule 614(b) of the West Virginia Rules of Evidence, which provides in part that "[t]he court may interrogate witnesses, whether called by itself or by a party[.]"

6. The state argued, and the record supports, that the trial court was not rehabilitating Ms. Bohm because her credibility had not been attacked.

## 2.

### *Admission of Blood Alcohol Test Results*

The second argument raised by the defendant is that it was error to admit his blood alcohol test results into evidence.[7] The defendant contends that the authentication and identification requirements of Rule 901 of the West Virginia Rules of Evidence were not met. Specifically the defendant contends that there was no evidence that the blood alcohol test results were in fact the defendant's, that there was no evidence that anyone actually saw blood being taken from the defendant, and that there was no evidence that the blood alcohol test results were kept by Ms. Bohm or Mr. Murray in the normal course of their business. The defendant's argument ultimately is that the blood alcohol test results could have been that of someone else.

The State does not directly confront the defendant's second argument in its brief.[8] Instead, the State contends that the defendant waived objection to the blood alcohol test results by introducing into evidence all other blood test results that were done by Mr. Murray. During the trial the defendant introduced blood test results which revealed that he was an insulin-dependent diabetic who was suffering from ketoacidosis at the time of the fatal accident. The gravamen of the defendant's theory of the case was that the accident was caused by a diabetic attack, not alcohol. To establish this theory it was necessary for the defendant to utilize Mr. Murray's test results that revealed his diabetic condition at the time of the accident. The State contends that the defendant can-not acknowledge the validity of the blood test results that go to his theory of the case and simultaneously deny the validity of the blood alcohol test results that go to the state's theory of the case.[9]

We agree with the state. First, the law in West Virginia is well established that a defendant cannot subsequently introduce the same evidence that he previously objected to without it constituting a waiver. *See State v. Harding*, 188 W.Va. 52, 422 S.E.2d 619, (1992); *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987); *Keller v. Wonn*, 140 W.Va. 860, 87 S.E.2d 453 (1955). In syllabus point 3 of *Smith, supra*, we stated:

> "Where a party objects to incompetent evidence, but subsequently introduces the same evidence, he is deemed to have waived his objection. However, one does not waive an objection otherwise sound and seasonably made by attempting to explain or destroy the probative value of the evidence on cross-examination."

*See also* Syl. Pt. 2, *Harding*. Nor can the defendant bring himself within the rule that no waiver occurs if the defendant is introducing the same evidence to rebut, destroy, or explain the improperly admitted evidence. *See 1 Wigmore on Evidence*, § 18, at 836–38 (Tillers rev. 1983). The defendant *sub judice* was not attempting to use the evidence defensively. Rather, this case is analogous to *State v. Corbett*, 177 W.Va. 397, 352 S.E.2d 149 (1986), where we rejected a similar assignment of error because the defendant was using the evidence offensively to establish a critical part of his defense. Under these

---

7. The defendant's blood alcohol level was .20% at the time of the accident. The trial court allowed the blood alcohol test results to come in as "other evidence of intoxication." *See State v. Dyer*, 177 W.Va. 567, 355 S.E.2d 356 (1987). The trial court found that the blood alcohol test results could not be admitted as "prima facie evidence of intoxication" under W.Va.Code, 17C–5–8, because the state failed to prove that the tests were done in strict compliance with statutory and regulatory requirements. *See State v. Dyer*, 160 W.Va. 166, 233 S.E.2d 309 (1977).

8. The state does point out that Ms. Bohm testified that she observed the blood being drawn from the defendant and personally delivered the sample to Mr. Murray, after she labelled the vials with the defendant's patient number and placed her identification number on it. Further, Mr. Murray also testified that the blood alcohol test results being proffered were done by him and were the results of testing done on the defendant's blood.

9. In the defendant's Reply Brief, he responded to the waiver issue by pointing out that the state was the first party to introduce the blood alcohol test results into evidence during its case-in-chief. Therefore, the defendant argues that it was proper to introduce the remaining blood test results in the defendant's case-in-chief, without waiving the objection to admitting the blood alcohol test results.

circumstances, we find that a waiver has occurred.

 Secondly, the authentication requirement of the West Virginia Rules of Evidence requires only that a party introducing evidence demonstrate that the evidence is in fact what its proponent claims. W.Va. R.Evid. 901(a). The "chain of custody" rule is simply a variation of this principle, *United States v. Howard–Arias,* 679 F.2d 363, 366 (4th Cir.), *cert. denied,* 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982), and requires that a prosecutor seeking to introduce evidence must establish a chain of custody from the time the items were taken to show that they are in substantially the same condition as when they were seized. *See State v. Dillon,* 191 W.Va. 648, 662, 447 S.E.2d 583, 597 (1994) ("The rules governing chain of custody are designed to ensure that evidence introduced at trial is substantially similar in condition to the same evidence as discovered during the pretrial investigation.") (citation omitted). We find that the state met its burden in this case. In Syllabus Point 2 of *State v. Davis,* 164 W.Va. 783, 266 S.E.2d 909 (1980), we stated:

> "The preliminary issue of whether a sufficient chain of custody has been shown to permit the admission of physical evidence is for the trial court to resolve. Absent an abuse of discretion, that decision will not be disturbed on appeal."

*See also* Syl. Pt. 8, *State v. Young,* 173 W.Va. 1, 311 S.E.2d 118 (1983). We find no abuse of discretion in this instance.[10]

**10.** We held in Syllabus Point 2 of *State v. Chamberlain,* 178 W.Va. 420, 359 S.E.2d 858 (1987), that:

" 'Before a physical object connected with a crime may properly be admitted into evidence, it must be shown that the object is in substantially the same condition as when the crime was committed. Factors to be considered in making this determination are: (1) the nature of the article, (2) the circumstances surrounding its preservation and custody, and (3) the likelihood of intermeddlers tampering with it.' Syllabus Point 1, *State v. Davis,* 164 W.Va. 783, 266 S.E.2d 909 (1980)."
We find these factors satisfied in the instant proceeding.

**11.** The defendant testified at trial that he drank eight cans of beer during the period in question.

### 3.

### *Admissibility of Exhibit No. 8*

The third argument raised by the defendant is that the trial court erred in not allowing into evidence defense Exhibit No. 8. This exhibit was a chart entitled "Beer Consumed By Roger Dale Knuckles (265 lbs.) On 11–14–93." The chart purported to reflect the rise and fall of defendant's blood alcohol level resulting from the consumption of eight beers [11] during the period from 10:30 a.m. through 7:00 p.m. on the date of the fatal accident. Based upon this chart the defendant's blood alcohol level would have been .000% at the time of the accident.[12] During the defendant's case-in-chief he called Dr. William J. Craske as a medical expert. Defense counsel reviewed the chart with Dr. Craske and Dr. Craske agreed with the mathematical calculations. However, Dr. Craske went on to clarify that the calculations did not apply to the defendant, because they were based upon a normal individual with a functioning liver and normal excretory and secreting systems. Dr. Craske had earlier testified that at the time of the accident the defendant's liver was not functioning because the defendant had not taken his insulin shots for several days.[13] Defense counsel sought to introduce the chart as Exhibit No. 8 on the grounds that it supported the defense's theory that the defendant did not consume enough beer to make him intoxicated at the time of the accident. The defendant contends that the trial court displayed a bias against the defendant by keeping out

However, Pitts testified that the defendant consumed between fourteen and twenty cans of beer.

**12.** The calculations used in the chart were based upon the blood alcohol chart set forth in W.Va. Code, 60–6–24, showing the estimated percent of alcohol in the blood by the number of drinks in relation to body weight and time of consumption.

**13.** Dr. Craske had not been given the blood alcohol test results by the defendant, therefore, during direct examination Dr. Craske was unaware that the defendant's blood alcohol level was .20% at the time of the accident. During cross examination by the state, Dr. Craske was made aware of defendant's blood alcohol level at the time of the accident.

Exhibit No. 8, but permitting the state to introduce the blood alcohol test results. The defendant contends the trial court's display of bias is prohibited under *State v. Crockett,* 164 W.Va. 435, 265 S.E.2d 268 (1979) and *State v. McGee,* 160 W.Va. 1, 230 S.E.2d 832 (1976), overruled on other grounds, *State v. McAboy,* 160 W.Va. 497, 236 S.E.2d 431 (1977). The defendant's reliance on *Crockett* and *McGee* is misplaced because neither case is on point with matters relevant here.

The state points out that the trial court excluded defendant's Exhibit No. 8 on the grounds that it would mislead the jury. In ruling on the admissibility of the exhibit the trial court held:

> "Counsel, with respect to Defendant's Exhibit Number 8, the Court has considered that matter, and I think I'm going to deny admission into evidence of that exhibit[,] [p]rimarily because of your doctor's testimony. Your doctor's testimony was fairly clear that he felt like Mr. Knuckles was in a diabetic crisis, I think was his terminology. His body wasn't functioning and this particular exhibit attempts to take the testimony as to the beer consumption and correlate it to a normal person's metabolic functions. With respect to the excretion of alcohol from the system, your own doctor's testimony time and time again was his body wasn't behaving normally.

> "The Court feels because of that, that exhibit has substantial potential to mislead the jury based on [Dr.] Craske's testimony."

The state further argues that under Rule 403 of the West Virginia Rules of Evidence, the trial court may exclude relevant evidence if its probative value is substantially outweighed by the danger of misleading the jury. *See State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994); 1 Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers,* § 1–5(c) (3d ed.) (1994). The state contends that the trial court's ruling on the exhibit was a proper application of judicial discretion under Rule 403, and did not reflect any improper bias on the part of the trial court against the defendant. Again, we embrace the state's position.

Rulings under Rule 403 are committed to the sound discretion of the trial court. *See Dillon,* 191 W.Va. at 661, 447 S.E.2d at 596. Our recent cases have held with regular consistency that an appellate court should find an abuse of discretion only when the trial court acted "arbitrary or irrationally." *See State v. McGinnis,* 193 W.Va. 147, 159, 455 S.E.2d 516, 528 (1994) ("Our function on this appeal is limited to the inquiry as to whether the trial court acted in a way so arbitrary and irrational that it can be said to have abused its discretion."). Although it might not have been the ruling this court would have made, the ruling of the trial court in this case does not come close to being irrational. Indeed, the role of the trial court is to keep from the jury's eyes or ears evidence that may be misleading. This is exactly what the trial court did in this case and we find no reversible error. Again, as we suggested in *McGinnis,* in reviewing a ruling made under our relevancy rules we review it in the light most favorable to the party benefitting from the lower court's ruling, in this case the state.

### 4.

### *Motion for Judgment of Acquittal*

The defendant's fourth argument is that the trial court committed error in denying his motion for acquittal under Rule 29(c) of the West Virginia Rules of Criminal Procedure. In making this argument the defendant asks this Court to assume that the evidence of the blood alcohol test results were erroneously admitted. With this assumption in view, the defendant contends that the evidence presented by the state was all circumstantial evidence and that under *State v. Gum,* 172 W.Va. 534, 309 S.E.2d 32 (1983), circumstantial evidence will not support a guilty verdict unless it is proved to the exclusion of every reasonable hypothesis of innocence. The defendant contends that Dr. Craske provided a reasonable hypothesis of innocence when he testified that the defendant crossed the center line of the highway and caused the accident as a result of a diabetic crisis. Therefore, the defendant postures that the trial court should have granted his motion for acquittal.

■ The state has presented several responses to this assignment of error. First, the state contends the defendant is misleading the Court regarding Dr. Craske's testimony. The reasonable hypothesis given by Dr. Craske was done without *any* knowledge that the defendant had a blood alcohol level of .20% at the time of the accident. Once the state apprised Dr. Craske, during cross examination, of the defendant's alcohol consumption prior to the accident, Dr. Craske confirmed that such a high blood alcohol level was possible because the defendant's diabetic condition prevented his body from metabolizing and excreting the alcohol. The state next asserts that the impact of the defendant's consumption of alcohol was a question of fact properly resolved by the jury.[14] That, at minimum, the evidence established the defendant consumed, by his own admission, eight cans of beer; and, according to his own medical expert, the defendant was not able to metabolize and excrete the alcohol from his system. Finally, the state points out that this Court's holding in *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995) overruled the reasonable hypothesis of innocence standard of *Gum*, and that using the *Guthrie* standard any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. The State did not address the issue of the retroactive application of *Guthrie* to this case.

■ The State is correct in its analysis of *Guthrie*. We, however, need not address *Guthrie* because the defendant is mistaken in two other material aspects of his argument.[15] First, the evidence that the defendant asked us to assume is inadmissible, we have found to be admissible. Therefore,

this critical evidence must be used by us in our sufficiency of evidence evaluation. Second, even if we had ruled the evidence objected to by the defendant was inadmissible, we nevertheless would use it to consider the sufficiency of evidence claim. Relying on *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), this Court in Syllabus Point 5 of *State v. Frazier*, 162 W.Va. 602, 252 S.E.2d 39 (1979), stated:

> "In order to determine if there is evidentiary insufficiency that will bar a retrial under double jeopardy principles, such determination is made upon the entire record submitted to the jury and not upon the residual evidence remaining after the appellate court reviews the record for evidentiary error."

*See also Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988) (where it was held that where evidence was admitted at trial, whether erroneous or not, would have been sufficient to sustain a guilty verdict, a defendant is not entitled to a judgment of acquittal). We find the evidence to be sufficient to sustain the verdict.

### 5.

### *Cumulative Error.*

■ The final issue raised by the defendant is that the cumulative effect of the alleged errors denied the defendant a fair trial. The defendant correctly points out that under *State v. Walker*, 188 W.Va. 661, 425 S.E.2d 616 (1992), a conviction may be set aside where the cumulative effect of numerous errors prevent a defendant from receiving a fair trial, even though any one of such errors standing alone would be harm-

14. The trial court specifically instructed the jury:

"[T]hat if you find that the contributing cause of the defendant's accident was his inability to drive because of his sugar diabetes and the accident occurred as a result of his illness, and not because of his being under the influence of alcohol, then you must acquit the defendant[.]"

15. We held in Syllabus Point 3 of *Guthrie*, that:

"A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or

circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled."

less error. However, because we find that there is no error in this case, the cumulative error doctrine has no application. Cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors.

### III.

### CONCLUSION

For the foregoing reasons, the defendant's convictions are affirmed.

Affirmed.