**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

September 18, 2015

**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)  No. 14-0756** (Cabell County 12-F-63)

**Harry Smith,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Harry Smith, by counsel Richard W. Weston, appeals the jury verdict and resentencing order related to his conviction for second degree murder. Respondent State of West Virginia ("State"), by counsel Sean Hammers, filed a response in support of the circuit court's order, to which petitioner replied.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 30, 2011, petitioner shot and killed his wife in the residence they shared in Cabell County.[1] After the shooting, at approximately 10:52 p.m., petitioner called 911 and waited at his home for police officers to arrive. Upon their arrival, the officers handcuffed petitioner (for officer safety) and transported him to the Ona field office of the Cabell County Sheriff's Department.[2] While at the Ona field office, petitioner provided a statement to Detective Larry Gay. Prior to speaking with petitioner, Detective Gay read petitioner his *Miranda*[3] rights, and petitioner signed a voluntary waiver form.[4]

---

[1]While petitioner does not dispute that he shot his wife, he contends the shooting was accidental.

[2]The State contends that during this time frame, petitioner was not under arrest.

[3]*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1062, 16 L.Ed.2d 694 (1966).

[4]Petitioner endorsed the voluntary waiver form at 1:53 a.m.  The voluntary waiver form included a paragraph that indicated petitioner was willing to answer questions, and did not want a lawyer or to go before a magistrate at that time. In completing the voluntary waiver form, (continued…)

In his statement to Detective Gay, petitioner denied that he acted with premeditation or malice in shooting his wife. Petitioner described that on the evening of the shooting he had been sitting with his wife in their home, with his gun at his side. Petitioner's wife was bothered by the presence of his gun and made complaints to him regarding the gun. In response to his wife's complaints, petitioner picked up the gun, pulled the hammer back, and handed the gun to his wife (with the barrel pointed towards her with his finger on the trigger). The gun reportedly discharged as petitioner was handing it to his wife.

Based upon petitioner's statement and his demeanor following the shooting, an arrest warrant was issued for petitioner, and he was charged with first degree murder.[5] On February 22, 2012, petitioner was indicted on the charge of first degree murder. On April 2, 2013, the State filed a motion to allow 404(b) evidence at trial. An in camera hearing related to the proposed 404(b) evidence was held on May 31, 2013, at which the circuit court heard testimony from seven witnesses. On October 4, 2012, the trial court entered its order regarding the State's motion to allow 404(b) evidence, and made specific rulings with respect to the testimony proffered by each of the seven witnesses, allowing the admission of some 404(b) evidence while excluding other such evidence.

On November 5, 2012, petitioner's trial commenced with jury selection. After jury selection, the circuit court held a hearing, outside of the presence of the jury, on the admissibility of petitioner's statements to law enforcement officers on the evening of the shooting. The circuit court found that while there was a two-hour time period between the shooting and the petitioner being transported to the field office, the purpose of the delay was not to compel a statement from petitioner, but to further the investigation and determine whether petitioner should be charged with any particular offense.

In its case-in-chief, the State called numerous witnesses, including six witnesses to testify regarding petitioner's prior bad acts.[6] After the testimony of each of these witnesses, a limiting instruction was read to the jury. In his case-in-chief, petitioner called Jack Ellis, the victim's boyfriend, as a trial witness. Mr. Ellis testified, under cross-examination, that the victim gave petitioner Xanax because he was getting abusive toward her and drinking a lot. He further testified that on a number of occasions – as many as eight – the victim told him that she had to sleep in her car to get away from petitioner's abuse. The victim reportedly told Mr. Ellis that she

---

petitioner acknowledged that no promises, threats, pressures, or coercion had been used, and that he understood and waived his rights

[5]Petitioner's demeanor following the shooting was described as calm. Petitioner asked no questions about his wife's condition. He did not show any worry or concern about his wife, either at his residence or later at the Ona field office.

[6]The 404(b) witnesses called by the State at trial were each identified in the State's motion to allow 404(b) evidence.

was afraid of petitioner and advised that petitioner had her followed, and, on one occasion, slapped her causing her glasses to fall from her face.

The trial concluded on November 13, 2013, with petitioner's conviction of second degree murder. On January 28, 2014, petitioner filed a motion for post-verdict judgment of acquittal. On February 5, 2014, a hearing was held on petitioner's motion for post-verdict judgment of acquittal. By order dated February 6, 2014, petitioner's motion was denied. Petitioner was sentenced on February 5, 2014, to forty (40) years in prison. On June 19, 2014, petitioner was resentenced to forty (40) years in prison.[7] It is from the trial court's June 19, 2014, order, which petitioner now appeals.

On appeal, petitioner raises five assignments of error. In his first assignment of error, petitioner argues that the circuit court erred by allowing, and improperly analyzing, numerous bad acts and character evidence of petitioner supported only by uncorroborated hearsay in violation of *State v. McGinnis*, and the West Virginia Rules of Evidence.[8] In syllabus point two of *State v McGinnis,* 193 W.Va. 147, 455 S.E.2d 516 (1994), we held, in part, that

> [w]here an offer of evidence is made under rule 404(b) of the West Virginia Rules of Evidence, the trial court, pursuant to Rule 104(a) of the West Virginia Rules of Evidence, is to determine its admissibility. Before admitting the evidence, the trial court should conduct an *in camera* hearing as stated in *State v. Dolin*, 176 W.Va. 688, 347 S.E.2d 208 (1986). After hearing the evidence and arguments of counsel, the trial court must be satisfied by a preponderance of the evidence that the acts or conduct occurred and that the defendant committed the acts. If the trial court does not find by a preponderance of the evidence that the acts or conduct was committed or that the defendant was the actor, the evidence should be excluded under Rule 404(b). If a sufficient showing has been made, the trial court must then determine the relevancy of the evidence under Rules 401 and 402 of the West Virginia Rules of Evidence and conduct the balancing required under Rule 403 of the West Virginia Rules of Evidence. If the trial court is then satisfied that the Rule 404(b) evidence is admissible, it should instruct the jury on the limited purpose for which such evidence has been admitted. A limiting instruction should be given at the time the evidence is offered . . .

Further, in *State v. LaRock,* 196 W.Va. 294, 310-11, 470 S.E.2d 613, 629-30 (1996), we held that the standard of review

> for a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination

---

[7]Petitioner was resentenced to clarify that he was given credit for all time served in jail since his incarceration upon conviction.

[8]Petitioner identifies twenty-nine such statements made by seven different witnesses at trial.

that there is sufficient evidence to show the other acts occurred. Second, we review *de novo* whether the trial court correctly found the evidence was admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

In the instant case, the circuit court held the required in camera hearing, as to the witnesses proffered by the State and made specific determinations as to which of these witness statements were admissible, and which were not admissible, along with establishing the purpose for which such testimony was admissible. Based on our review of record before this Court, we find that the circuit court did not abuse its discretion in allowing the testimony of the State's witnesses as to petitioner's alleged prior bad acts and intentions. The circuit court completed the necessary hearing, as directed by *McGinnis*, made the appropriate findings, and offered limiting instructions following the testimony of each of the 404(b) witnesses and, again, in the jury charge.

As to the remaining witness, Jack Ellis, who was called as a trial witness by petitioner, it is clear from the record that petitioner's counsel did not make any objections regarding Mr. Ellis's testimony during his cross-examination at trial. "Errors assigned for the first time on appeal will not be regarded in any matter of which the trial court had jurisdiction or which might have been remedied in the trial court had objection been raised there." *State v. Dennis*, 216 W.Va. 331, 350, 607 S.E.2d 437, 456 (2004). Accordingly, as petitioner made no objections regarding Mr. Ellis's testimony at trial, we find petitioner waived any objection to Mr. Ellis's testimony, and rule that the circuit court did not abuse its discretion in allowing the subject evidence.

In his second assignment of error, petitioner argues that the circuit court erred by allowing petitioner's statement to Detective Gay to be admitted, as the police violated the prompt presentment rule under West Virginia Code § 62-1-5(a). Petitioner asserts that while he was arrested at approximately 11:30 p.m., he was taken to the Ona field office for questioning (where he signed a rights waiver at 1:53 a.m.) rather than directly to a magistrate. Petitioner argues that he was taken to the police station after being placed under arrest for the sole purpose of obtaining a statement or confession.

While it is true that "[t]he delay in taking a defendant to a magistrate may be a critical factor [in the totality of circumstances making a confession involuntary and hence inadmissible] where it appears that the primary purpose of the delay was to obtain a confession from the defendant [,]" based upon our review of the record, it appears that there was no violation of the prompt presentment rule in the instant case. Syl. Pt. 13, in part, *State v. Newcomb*, 223 W.Va. 843, 679 S.E.2d 675 (2009) (quoting Syl. Pt. 6, *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982); Syl. Pt. 1, *State v. Guthrie*, 173 W.Va. 290, 315 S.E.2d 397 (1984)). Further, "[o]rdinarily the delay in taking an accused who is under arrest to a magistrate after a confession has been obtained from him does not vitiate the confession under our prompt presentment rule." Syl. Pt. 14, in part, *Newcomb* (citations omitted).

Contrary to petitioner's argument, the circuit court found that petitioner was not under arrest when he was taken to the police station. The record reveals that petitioner was not arrested until after he gave his statement to Detective Gay. The circuit court found that petitioner failed to demonstrate the sole purpose for taking him to the Ona field office was to obtain a confession. "'The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion.' Syllabus Point 1, *State v. Calloway*, 207 W.Va. 43, 528 S.E.2d 490 (1999)." *Newcomb*, 223 W.Va. at 851, 679 S.E.2d at 683. Therefore, we find that the circuit court did not abuse its discretion regarding petitioner's statement and his challenge under the prompt presentment rule.

Next, petitioner argues that the circuit court erred by not allowing the testimony of his retained expert, Dr. Bobby Miller.[9] The record reveals that on October 30, 2012, five days prior to trial, the State filed a motion in limine to preclude Dr. Miller's testimony.[10] Prior to trial, the circuit court, outside of the presence of the jury, addressed the State's motion to exclude Dr. Miller's testimony and advised the parties that it had not yet made a decision on this issue. Neither party attempted to call Dr. Miller to the witness stand at trial. At the conclusion of the State's case, it reminded the circuit court about its pending motion regarding Dr. Miller's testimony. The court advised the parties it was still thinking about the motion, to which petitioner's counsel responded "relieve your mind." No additional reference to Dr. Miller was made at trial. Petitioner now alleges that the circuit court's error in not allowing Dr. Miller's testimony precluded petitioner from presenting a proper defense. We disagree.

"A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 3, *State v. Larry M.*, 215 W.Va. 358, 559 S.E.2d 781 (2004) (citation omitted). It is clear from the record that petitioner did not call Dr. Miller as a trial witness, and made no request for the circuit court to issue a ruling on the State's motion to exclude Dr. Miller's testimony. The decision to exclude Dr. Miller as a trial witness was a voluntary decision of petitioner's counsel. The assertion that the circuit court prevented Dr. Miller from testifying is unsupported in the record. Further, because this argument is now being raised for the first time on appeal, we must necessarily find that the argument has been waived. Petitioner was required to bring any issue it perceived regarding the exclusion of Dr. Miller's testimony before the circuit court. This Court has "long held that theories raised for the first time on appeal are not considered." *Clint Hurt & Assoc. v. Rare Earth Energy, Inc.*, 198 W.Va. 320, 329, 480 S.E.2d 529, 538 (1996). This Court will not consider nonjurisdictional questions that have not been considered by the trial court. *Id*. "The rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been

---

[9]Dr. Miller, a forensic psychiatrist, opined that petitioner (seventeen months after his wife's death) suffered from post-traumatic stress disorder ("PTSD") as a result of killing his wife, and that such a finding was uncommon in murder defendants.

[10]The State argued that because petitioner was not claiming diminished capacity, Dr. Miller's purported testimony would not aid the jury in determining a fact in issue in this case, and should be excluded.

5

developed in such a way so that a disposition can be made on appeal. . . . there is also a need to have the issue refined, developed and adjudicated by the trial court so that we may have the benefit of its wisdom." *Id*. (citing *Whitlow v. Bd. of Educ. of Kanawha County*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993)).

In his fourth assignment of error, petitioner contends that the trial court erred by allowing the victim's family to wear purple support ribbons, which influenced the jury and denied petitioner the right to a fair trial by an impartial jury. In support of his argument, petitioner relies on syllabus point two of *State v. Franklin*, 174 W.Va. 469, 327 S.E.2d 449 (1985), in which this Court found that

> [w]here the defendant was on trial for a felony under W.Va. Code 17C-5-2 [1981] [driving under the influence of alcohol], the obvious presence of members of an organization dedicated to stiffer penalties for drunk drivers who advertised their association with that organization by wearing badges was reversible error.

However, the facts of the instant case are drastically different from the facts present in *Franklin*. In *Franklin*, defendant's counsel repeatedly requested a mistrial or alternatively asked the court to order the removal of the offending badges, or the spectators wearing them, from the courtroom. Conversely, in the instant case, it was not until the fourth day of trial, during a sidebar conference, that petitioner's counsel advised the court that the victim's family members were present in the courtroom and were wearing purple ribbons. Despite advising the circuit court of the presence of these family members, petitioner's counsel made no identification of the individuals at issue, did not request that these individuals be admonished, made no request that the jury be polled (to determine if observing the ribbons had affected them), and did not move for a mistrial. Outside of the presence of the jury, the judge, sua sponte, directed these individuals to remove the purple ribbons. Petitioner's counsel made no further request for curative action. We are not persuaded by petitioner's argument on this matter and finds that he waived this assignment of error.

In *LaRock*, 196 W.Va. at 316, 470 S.E.2d at 635, this Court explained as follows:

> Our cases consistently have demonstrated that, in general, the law ministers to the vigilant, not to those who sleep on their rights . . . . When a litigant deems himself or herself aggrieved by what he or she considers to be an important occurrence in the course of a trial or an erroneous ruling by a trial court, he or she ordinarily must object then and there or forfeit any right to complain at a later time. The pedigree for this rule is of ancient vintage, and it is premised on the notion that calling an error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs.

This Court in *LaRock* further explained:

> There is also an equally salutary jurisdiction for the raise or waive rule; It prevents a party from making a tactical decision to refrain from objecting and, subsequently, should the case turn sour, assigning error (or even worse, planting

6

an error and nurturing the seed as a guarantee against a bad result). In the end, the contemporaneous objection requirement serves an important purpose in promoting the balanced and orderly functioning of our adversarial system of justice.

196 W.Va. at 316, 470 S.E.2d at 635.

Petitioner's fifth and final assignment of error is that the circuit court's cumulative error prevented him from receiving a fair trial. *See* Syl. Pt. 5, *State v. Smith*, 156 W.Va. 385, 193 S.E.2d 550 (1972) (The cumulative effect of numerous errors may result in the setting aside of a criminal conviction.) However, because we find no error in this case, the cumulative error doctrine has no application. As this Court reasoned in *State v. Knuckles*, 196 W.Va. 416, 426, 473 S.E.2d 131, 141 (1996) "[c]umulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 18, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II