## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Petitioner Below, Respondent**

**vs.)  No. 21-0640** (Harrison County 20-F-192-3)

**Peter James Wodzinski, Jr.,**
**Respondent Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Peter James Wodzinski, Jr. appeals the July 12, 2021, order of the Circuit Court of Harrison County that sentenced him to an indeterminate term of fifteen years to life in prison for his conviction of death of a child by parent, guardian, or custodian or other person by child abuse under West Virginia Code § 61-8D-2a.[1]

Petitioner and his co-defendants (his wife and his mother-in-law)[2] were jointly indicted on one count of death of a child by a parent, guardian, or custodian or other person by child abuse under West Virginia Code § 61-8D-2a. The victim was petitioner's five-year-old nephew (the "child"). The trial court granted the defendants' motion to sever their cases for separate trials.

The State's trial evidence included pictures of the child's body and a medical examiner testified that the manner of the child's death was homicide caused by blunt force trauma to the head. An emergency room physician testified that when the child arrived at a hospital, he was not awake, did not respond to commands or pain stimulus, and had bruises all over his body in multiple stages of healing and a laceration to his penis and scrotum. The emergency room physician said a CT scan revealed bleeding on the left side of the child's brain that was 12 to 36 hours old. The emergency room physician spoke with petitioner's wife and the grandmother who said that they could not awaken the child after his nap. The emergency room physician opined that the women's story did not make sense given the age of the child's injuries. A second hospital physician testified

---

[1] Petitioner appears by counsel David Mirhoseini, the State by counsel Patrick Morrisey and Lara K. Bissett.

[2] Petitioner's wife was the child's paternal aunt; petitioner's mother-in-law was the child's paternal grandmother. Prior to the child's death, the child lived with petitioner, his wife, and the grandmother.

1

similarly and pronounced that the child's condition "was probably one of the worst that I've ever had to take care of." This second doctor testified that the child was declared brain dead two days after he was hospitalized and that it was his opinion, to a reasonable degree of medical certainty, that the child died from non-accidental trauma, or child abuse. A forensic pathologist testified that the child died from blunt force injuries to the head and that the death was a homicide.

In addition, a digital forensics analyst testified that she recovered a series of text messages between petitioner and his wife from the couple's cell phones. Petitioner wrote one text saying, "What the f--k? [The victim's] face looks so much worse." Petitioner's wife responded, "Imma put make up on him to hide it." Petitioner replied, "F--king needs to stop." The wife replied: "I know I grabbed his face last night but it wasn't that hard I don't think to bruise him." Thereafter, the wife wrote petitioner saying, "Hey what the f--k is wrong with [the victim's] face? Did you tape his mouth? And where did the bruises come from on his head?" Petitioner responded: "I been putting his ass to work." Wife replied, "There looks like there was a piece of tape over his mouth and he has new purple bruises on his forehead. When I asked him how he got the bruises he said u smacked him there." Later, wife texted petitioner stating: "Once again, I shouldn't have made [the victim] a doctor's appointment because every time I do I have to cancel because of the bruises on his ass is f--king bad[.]"

A West Virginia State Police sergeant testified that petitioner's wife and the grandmother told him that on the day the child was taken to the hospital, they left petitioner alone with the child for several hours. The sergeant said petitioner told him that the child had a headache that day and that he did not feel well so they laid in bed together.

The State proposed Jury Instruction No. 3, which offered the jury three alternative verdicts: (1) guilty of the death of a child by parent, guardian, or custodian by inflicting child abuse (in violation of West Virginia Code § 61-8D-2a(a)); (2) guilty of the death of a child by parent, guardian, or custodian by knowingly allowing child abuse by another person (in violation of West Virginia Code § 61-8D-2a(b)); or (3) not guilty. Petitioner's counsel did not object to Jury Instruction No. 3 and it was read to the jury. However, petitioner twice requested that the jury be instructed on the elements of involuntary manslaughter, arguing that child abuse resulting in death should be classified as a felonious homicide. The State responded that the Legislature intended for child abuse resulting in death to be a separate and distinct offense from manslaughter or other forms of homicide. The circuit court refused to give the involuntary manslaughter instruction, in part finding that it was not supported by the evidence. The jury found petitioner guilty of the second conclusion above (death of a child by a parent, guardian, or custodian by knowingly allowing abuse by another person). After trial, petitioner filed a motion for a judgment of acquittal which the court denied. On July 12, 2021, the trial court sentenced petitioner to an indeterminate sentence of fifteen years to life in prison.

Petitioner now appeals. Petitioner first argues that the circuit court erred in denying his motion for judgment of acquittal because the evidence was insufficient for a reasonable jury to find petitioner guilty beyond a reasonable doubt of having violated West Virginia Code § 61-8D-2a(b). "The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citing *State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996)).

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Petitioner was convicted under West Virginia Code § 61-8D-2a(b), which provides:

If any parent, guardian or custodian knowingly allows any other person to maliciously and intentionally inflict upon a child under the care, custody or control of such parent, guardian or custodian substantial physical pain, illness or any impairment of physical condition by other than accidental means, which thereby causes the death of such child, then such other person and such parent, guardian or custodian are each guilty of a felony.

We find that the evidence presented at trial was sufficient for the jury to find that the State proved the essential elements of petitioner's crime beyond a reasonable doubt. Petitioner argues that the State failed to prove the child was injured while under his "care, custody or control," and although he correctly states that none of the State's witnesses established who caused the child's fatal injuries, the witnesses who treated the child before his death were adamant that the child's injuries were caused by abuse. Furthermore, the medical examiner concluded that the manner of death was homicide by blunt force trauma. Crucially, text messages showed petitioner was aware of the victim's many injuries, and the testimony showed that petitioner was alone with the child for hours before the child's injuries were discovered at the hospital. Thus, the evidence was sufficient to have led a reasonable jury to find petitioner guilty beyond a reasonable doubt of violating West Virginia Code § 61-8D-2a(b). Accordingly, the circuit court did not err in denying petitioner's motion for post-verdict judgment of acquittal.

In petitioner's second assignment of error, he argues that the circuit court erred in denying his requests for an involuntary manslaughter instruction. Petitioner points to the fact that the statute he was indicted under, West Virginia Code § 61-8D-2a ("Death of a child by a parent, guardian or custodian or other person by child abuse"), is essentially a form of felonious homicide. However, we note that petitioner twice failed to object or otherwise explain clearly why the circuit court was in error for not giving an involuntary manslaughter instruction. Accordingly, he has waived this assignment of error. *See State v. Lewis*, 235 W. Va. 694, 703 n.24, 776 S.E.2d 591, 600 n.24 (2015) ("No party may assign as error the giving or the refusal to give an instruction . . . unless that party objects thereto before the arguments to the jury are begun, stating distinctly the matter to which that party objects and the grounds of the objection[.]" (quoting W.Va. R. Crim. P. 30, in part)).

In petitioner's third assignment of error, he argues that the court plainly erred in giving Jury Instruction No. 3 because it was confusing, misleading, and misstated the law as to West Virginia Code § 61-8D-2a(b). However, before the circuit court, petitioner and his counsel were

3

asked if the defense had any objection to Jury Instruction No. 3. Counsel replied: "[I]t looks like an accurate recitation of the statute. . . . I don't think I have any objection[.]." Thereafter, petitioner's counsel again said he had no objection to the instruction. "When there has been a knowing and intentional relinquishment or abandonment of a known right, there is no error and the inquiry as to the effect of a deviation from the rule of law need not be determined." Syl. Pt. 8, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). Accordingly, we find petitioner waived this assignment of error.

In petitioner's fourth assignment of error, he argues that the circuit court erred in admitting at his trial and over his objection the photos of the child's injuries found in the State's Exhibits 10, 13, 14, and 27-36 because they were overly prejudicial. "A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). "The general rule is that pictures or photographs that are relevant to any issue in a case are admissible." *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W. Va. 492, 497, 345 S.E.2d 791, 796 (1986). West Virginia Rule 403 of the Rules of Evidence provides for the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice" or to prevent needless presentation of cumulative evidence. Here, petitioner argues only that the photographs were "very difficult for any empathetic person to look at[.]" We have recognized that in a society exposed to visual depictions of war and graphic television content, "gruesome" or "inflammatory" photographs "simply do not have the prejudicial impact on jurors as once believed[.]" *State v. Derr*, 192 W. Va. 165, 177 n.12, 451 S.E.2d 731, 743 n.12 (1994). Indeed, we have often affirmed the admission of disturbing pictures of victim's bodies. *See, e.g.*, *State v. Anderson*, 228 W. Va. 58, 67, 717 S.E.2d 245, 254 (2011). Here, the record shows that the photos used at trial were probative evidence of the abuse sustained by the victim that led to his death.[3] We find that the circuit court did not abuse its discretion in admitting these photos and, accordingly, we find no error.

In petitioner's fifth and final assignment of error, he argues that the accumulation of errors in the trial court denied him his right to a fair trial. Having found no trial error, we find no cumulative error. *See State v. Knuckles*, 196 W. Va. 416, 426, 473 S.E.2d 131, 141 (1996) ("Cumulative error analysis should evaluate only the effect of matters determined to be error, not the cumulative effects of non-errors.").

Accordingly, for the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 17, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker

---

[3] Petitioner also argues that some of the photographs were duplicative. However, the record reveals that the trial court excluded duplicative photographs offered by the State.

Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn